# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DEMOND R. MILLS,    )
       )
   Movant,    )
       )
v.    )   Case No.  CV409-051
       )        CR406-095
UNITED STATES OF AMERICA,    )
       )
   Respondent.    )

## REPORT AND RECOMMENDATION

Convicted and sentenced to 108 months for possession with intent to distribute 500 or more grams of powder cocaine in violation of 21 U.S.C. § 841(a)(1), Demond R. Mills unsuccessfully appealed, *United States v. Mills*, 271 F. App'x 886 (11th Cir. 2008), and now moves, over the government's opposition, for 28 U.S.C. § 2255 relief. CR406-095, doc. 105 (§ 2255 motion); doc. 109 (response). His motion should be denied.

## I. BACKGROUND

The Eleventh Circuit detailed the events leading up to Mills's conviction:

On February 8, 2006, Kevin Robinson and Demond Mills were driving on I-95 when Sheriff's Deputy Mark Crowe initiated a traffic stop. Robinson, who was driving, pulled over to the side of the road. While giving Robinson a ticket for a minor traffic violation, Crowe became suspicious that the car might contain drugs. Although Robinson refused to consent to a search of the car, Crowe called for a canine unit. The drug dog and its handler happened to be nearby, and they arrived before Crowe had finished giving Robinson a warning citation. The dog sat down by the car's rear passenger door, its signal that it had scented drugs there. Upon searching the car, the handler found a package containing approximately a kilogram of cocaine.

Mills and Robinson were arrested and taken to the Bryan County jail. Both signed *Miranda* waivers and gave statements to Detective Gary Provost. Mill's statement recounted his version of how he came to be in the car with Robinson and the cocaine. Mills made the following claims: A woman named "Fluff" asked him to get rid of her car so that she could claim it had been stolen to her insurance company. Before he and Robinson left Florida, Fluff asked Mills to take the rear passenger door panel off so that she could get something inside. Fluff took out a package of cocaine, drove away in the car, and then returned with the car an hour later. Then Mills and Robinson took the car and started to drive to Delaware, where Mills lived. They were on their way there when they were arrested. Robinson's statement recounted basically the same facts.

A federal grand jury indicted Mills and Robinson each with one count of possession with intent to distribute 500 or more grams of powder cocaine, in violation of 21 U.S.C. § 841(a)(1). Mills pleaded not guilty. Robinson pleaded guilty to a lesser included charge and agreed to testify against Mills.

*Mills*, 271 F. App'x at 886.

At trial, Crowe and Provost testified to the facts recounted above. A chemist opined that the seized package contained 1031.1 grams of powder cocaine. Per his agreement with the government, Robinson testified against Mills. *Id.* Mills unsuccessfully challenged the sufficiency of the evidence on appeal. *Id.* at 887 (it was for the jury to believe his word -- that he knew nothing of the cocaine -- over Robinson's, who testified that he did). That was his only appellate issue.

## II. ANALYSIS

Mills, who was represented at trial and on appeal by John D. Harvey but who is now proceeding pro se, raises both the evidentiary insufficiency claim as well as seven other claims, including Ineffective Assistance of Counsel (IAC). Doc. 105 at 10.[1] The government argues that the claims not raised on appeal are procedurally defaulted. Doc. 109 at 4-26.

"Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255

---

[1] Because of formatting issues, the Court's docketing system often "screen-prints" on each document's page pagination different than the original, paper-copy of the document. All page numbers cited here are the "screen-print" numbers.

proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Accordingly, any grounds raised here that could have been raised on appeal are procedurally defaulted unless Mills can establish cause and prejudice excusing his default (or establish his actual innocence of the crime). *Id.* at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). It is well established that "constitutionally '[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default. *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted). Mills argues ineffective assistance of counsel as cause to excuse his defaulted claims. He also raises an independent IAC claim. That claim is not defaulted, for such a "claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Accordingly, the Court will consider Mills's independent IAC claim (in all of its parts) and will determine whether IAC may excuse the default of the six other claims he failed to raise on direct appeal.

The Court will not, however, allow Mills to relitigate the merits of the sufficiency of the evidence claim, since it was raised and rejected on

direct appeal. It is well settled that in addressing a § 2255 collateral attack upon a conviction or sentence, "[a] district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978) ("a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal"); 3 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 595 at 723 n.25 (3d ed. 2004)). The preclusive effect[2] of issues decided on direct appeal during a later § 2255

---

[2] Some courts have characterized the prohibition on using § 2255 to readjudicate claims heard and rejected on direct appeal as an aspect of the "law of the case" doctrine. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *United States v. Mazak*, 799 F.2d 580, 581 (7th Cir. 1986); *see also Thomas v. United States*, 572 F.3d 1300, 1304 (11th Cir. 2009) (noting that the Eleventh Circuit had not previously characterized the § 2255 preclusion rule as an application of the law the case doctrine, but suggesting that this may be the appropriate analysis). That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the *same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphasis added). The Seventh Circuit and some other courts have reasoned (or implicitly assumed) that a § 2255 collateral attack upon a conviction or sentence is in essence the "same case" as the original criminal prosecution. But there is reason to doubt the notion that a § 2255 proceeding is the "same case" as the underlying criminal prosecution. *See* 3 FEDERAL PRACTICE AND PROCEDURE § 590 (noting that the Supreme Court has held that a § 2255 motion "'is not a proceeding in the original criminal prosecution but an independent civil suit,'" and questioning whether the § 2255 rules drafters (who reached a contrary conclusion) were free to disregard the Supreme Court's holding). Regardless of the label given to this relitigation bar, it is clear that "[o]n collateral review of federal criminal convictions, the federal courts apply the law of the case doctrine, *or something like it*, to their prior decisions." Kent S. Scheidegger, *Habeas Corpus*,

collateral proceeding will give way in the presence of extraordinary circumstances, such as an intervening change in the law or a showing of actual innocence. *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989); 3 Federal Practice and Procedure § 595 at 723; s*ee Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring in part and dissenting in part) (the "federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal."). Here, Mills has not offered any extraordinary circumstance that would warrant reopening the sufficiency of the evidence claim that was decided adversely to him during his direct appeal to the Eleventh Circuit. Accordingly, the Court declines to reach the merits of that claim.

In addressing Mills's attorney ineffectiveness claims, the Court is guided by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two part test for determining whether counsel performed

---

*Relitigation, and the Legislative Power*, 98 Colum. L. Rev. 888, 915 (1998) (emphasis added).

ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Mills must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333

(11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

## A. Racial Profiling (Grounds 1 (IAC), 2 & 3)

Harvey contested the traffic stop as unduly prolonged beyond the time needed to process the traffic violation:

> Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search. *United States v. $404 ,905.00 in U .S. Currency*, 182 F.3d 643 , 648 (8th Cir. 1999). The subject search was unconstitutional because it was unreasonably prolonged after the arresting officer had made his decision to release the driver with a warning.

Doc. 38 (Harvey's pretrial suppression motion br.) at 2-3; *see also* doc. 52 at 25-29 (motion hearing tr.). Mills insists that a reasonably competent attorney would have challenged it as racial profiling. The government's

§ 2255 response brief employs corroborating semantics: "Deputy Crowe indicated that he was *intrigued* by this vehicle and pulled away from his post to follow the vehicle. After getting behind the vehicle, he observed [it] cross from the center lane into the right lane and back into the center lane." Doc. 109 at 10 (cite omitted; emphasis added). The notion did not go unnoticed:

> THE COURT: I'm just intrigued. What about this vehicle caused you to do that [i.e., pull out from a stationary position and follow Mills's car]?
>
> THE WITNESS: Well, normally two males driving late at night in a vehicle, it piques my interest a lot of times. And I pulled out and followed the vehicle.

Doc. 52 at 31.

Emphasizing that he and Robinson are both black, Mills concludes that racial profiling, and not any sort of reasonable suspicion or probable cause, instigated the entire chain of events. He reasons that Harvey thus should have attacked the prosecution with a racial profiling charge, would have won, and thus the case would have been dismissed pretrial. Harvey, Mills concludes, therefore fell below the *Strickland* standard:

> [D]eputy Crowe only pulled out to follow Robinson and Defendant Mills "because his interest was piqued" about two "black" males driving in a vehicle late at night, and not a moving traffic violation, [so] no probable cause existed, and the subsequent stop and search

violated Movant's Fourth Amendment right to the United States Constitution.

In other words, it was not because of a moving traffic violation that caused Deputy Crowe to pull out and follow Robinson and Defendant Mills in the first instance. The fact that Deputy Crowe may have later observed a "lane change" or it over the roadway" is irrelevant, because, his reason or probable cause for initially pulling out was not justified by a moving traffic violation, but instead the result of his own personal interest being piqued by two "black" males driving in a vehicle late at night.

Doc. 105 at 26-27; *see also id.* at 27-30.

Racial profiling has been rightfully condemned. *See, e.g., Dique v. New Jersey State Police*, 603 F.3d 181, 183 (3d Cir. 2010) (Hispanic racial profiling civil rights claim). But Harvey cannot be found ineffective because of *Whren v. United States*, 517 U.S. 806, 811 (1996), which rejected "the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause."[3] It simply does not

---

[3] *Whren*

established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime. And once a car has been legally stopped, the police may "escalate" the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants.

*United States v. Moseley*, 454 F.3d 249, 252 (3rd Cir. 2006). *Whren's* rationale has been reinforced:

*Whren* has been reaffirmed by *Arkansas v. Sullivan*, 532 U.S. 769, 121 S. Ct.

matter if racism drove Crowe to *follow* Robinson's vehicle; what matters is that Crowe had legitimate probable cause (the weaving) to *stop* it. He did,[4] and this Court's credibility determination on that score is virtually unchallengeable. *Franklin*, 547 F.3d at 733 ("On matters like this, the district court's choice of whom to believe is almost never vulnerable to a

---

1876, 149 L.Ed.2d 994 (2001), in which the Court reiterated that it would not entertain arguments based on the "real" motivations behind otherwise lawful traffic stops. *Id*. at 771-72, 121 S. Ct. 1876. The Court's recent Fourth Amendment jurisprudence offers observers little reason to believe that the justices wish to revisit this decision. *See, e.g., Virginia v. Moore*, ---U.S. ----, 128 S. Ct. 1598, 170 L.Ed.2d 559 (2008), *Atwater v. Lago Vista*, 532 U.S. 318, 121 S. Ct. 1536, 149 L.Ed.2d 549 (2001).

*United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008).

[4]   Crowe testified at the evidentiary hearing:

**Q**   Okay.  What the violation under Georgia law that you  would have been stopping that vehicle for based upon what  you observed.

**A**   It would be weaving over the roadway.

**Q**   Weaving over the roadway.

**A**   Yes, sir.

**Q**   And that is a violation of Georgia law for which you  are authorized to commit traffic stop.

**A**   Yes, sir, that's correct.

Doc. 52 at 11; *see also Steinberg v. State*, 286 Ga. App. 417, 419 (2007) ("weaving without reason into nearby lanes violates OCGA § 40-6-48(1) and justifies a stop") (note and punctuation omitted).

finding of clear error.") (internal quotes and cite omitted).  Harvey thus

cannot be found "*Strickland*-defective," so this claim fails.[5]

## B.  "Warning" Subpoena (Ground 1)

Mills next contends that Harvey was ineffective for failing to

subpoena Officer Crowe's records of the warning that Crowe gave to

Robinson.   Doc. 105 at 13.  These records, he concludes, "were essential

to preparing a defense because the issue went to probable cause to stop

the vehicle in the first instance."  *Id*.  This claim also fails because the

Court credited Crowe's testimony that he in fact pulled the Robinson

---

[5]   As *United States v. Viezca*, 555 F.Supp.2d 1254 (M.D. Ala. 2008) explains, *Whren* did not say racial profiling could not be addressed, only that the Fourth Amendment is not the appropriate vehicle for it.  *Id*. at 1265-66.  Instead, it must brought under the Equal Protection Clause, but the evidentiary showing under that can be daunting to say the least.  *See id*. at 1266-67; *see also Tyler v. Jackson*, 2010 WL 2560467 at * 4 (D. Neb. June 23, 2010) ("When the claim is selective enforcement of the traffic laws or a racially-motivated arrest, the plaintiff must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose.") (quotes and cite omitted).

Too, Mills is bringing an IAC claim, so he must show that racial profiling evidence existed, was reasonably obtainable, and that no competent lawyer would have failed to raise this claim.  Merely pointing out that he and Robinson are black (doc. 105 at 16-19) obviously is not enough.  *See Spencer v. Deluca*, 2010 WL 2076912, *3 (W.D. Pa. May 21, 2010) ("Attaching affidavits from a few other black defendants also stopped by [a police officer] is less than the allegations held insufficient even to justify discovery in support of a criminal defense in *United States v. Hedaithy*, 392 F.3d 580 (3d Cir.2004), *cert. denied*, 544 U.S. 978, 125 S.Ct. 1882, 161 L.Ed.2d 731 (2005)"); *Campbell v. United States*, 2010 WL 2349591 at * 2-3 (W.D. Mich. Jun. 7, 2010) (IAC claim, based in part on counsel's alleged failure to investigate racial profiling claim, denied for lack of evidence showing it was reasonably discoverable by counsel).  Nor will it suffice to simply declare oneself the victim of racial profiling. *Green v. Gonzalez*, 2010 WL 843885 at * 4 (S.D.N.Y. Mar. 8, 2010).

vehicle over for weaving, and only speculation supports Mills' assertion
that no written warning ticket was issued or that the officer's failure to
issue such warning (after discovering cocaine in the vehicle) would have
altered the suppression hearing result.

### C. "If It Walks Like A Duck. . . ." (Grounds 1 & 7)

Mills next argues that Harvey was ineffective because

> he failed to object, and request a hearing for the district court judge
> to recuse himself, when he made a biased and highly prejudicial
> comment to the jury at the commencement of trial. Although not
> included in the record, for whatever reason, the Honorable B.
> Avant Edenfield told jury members that, "If it walks like a duck,
> quacks like a duck, then it's probably a duck." This statement
> clearly went to the sufficiency of the evidence in the case and
> implied guilt upon Defendant Mills. This statement was highly
> prejudicial and yet counsel failed to object and make any request
> for a hearing on Judge Edenfield recusing himself based on this
> biased statement which implied guilt, or that suggested any
> questionable decision regarding Defendant Mills' guilt should be
> weighed in favor of the prosecution.

Doc. 105 at 7-8.

This claim also fails. "The reporter's transcript of a trial is
presumed to be accurate." *Abatino v. United States*, 750 F.2d 1442, 1445
(9th Cir. 1985). "The transcript in any case certified by the reporter or
other individual designated to produce the record shall be deemed prima
facie a correct statement of the testimony taken and proceedings had."

28 U.S.C. § 753(b). The Court has not been shown anything other than Mills's unsworn recollection (and that's not enough) to overcome the statutory presumption that the transcript is correct. Hence, no "duck" comments were made. Even were this factual assertion true, merely urging trial jurors, at the *commencement* of a trial, to use their common sense when evaluating evidence ("If it walks like a duck. . . .") cannot reasonably be found to have constituted an undue "prosecutorial" bias.[6] Thus, Harvey was not deficient on that score.

### D. 18 U.S.C. § 201(c)(2) (Grounds 1 & 6)

_____

[6]  As one court explained:

> The Supreme Court has long held that it is generally permissible for judges to comment upon the evidence in a case, so long as they do so with "great care . . . as not to mislead . . . [or] be one-sided." *Hickory v. United States*, 160 U.S. 408, 423, 16 S. Ct. 327, 40 L. Ed. 474 (1896); *see also Quercia v. United States*, 289 U.S. 466, 470, 53 S. Ct. 698, 77 L .Ed. 1321 (1933) (finding that judges are permitted to comment on the evidence, as long as he does not "distort it or add to it").

*Guest v. Marshall*, 2010 WL 770376 at * 7 (C.D. Cal. Feb. 24, 2010). For that matter,

> a claim of judicial misconduct by a trial judge does not entitle a petitioner to habeas relief unless the judge's behavior rendered the trial so fundamentally unfair as to deny due process under the federal Constitution. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir.1995). To sustain a claim of judicial misconduct on habeas review, there must be an "extremely high level of interference" by the trial judge which creates a "pervasive climate of partiality and unfairness." *Id.* (*quoting United States v. DeLuca,* 692 F.2d 1277, 1282 (9th Cir.1982)).

*Guest*, 2010 WL 770376 at *7.

Mills next argues that Harvey was ineffective for failing to object to, and thus trying to prevent, Robinson's testimony. He maintains that it violated 18 U.S.C. § 201(c)(2), "which forbids anyone from promising anything of value to any person to testify under oath in a judicial proceeding." *United States v. White*, 342 F. App'x. 488, 489 (11th Cir. 2009). Doc. 105 at 14, 34-37. The Eighth Circuit

> rejected a similar argument in *United States v. Johnson*, 169 F.3d 1092, 1098 (8th Cir. 1999). *See also United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) (en banc); *United States v. Haese*, 162 F.3d 359 (5th Cir. 1998); *United States v. Ware*, 161 F.3d 414 (6th Cir. 1998). In *Johnson*, [it] concluded that "[§ 201(c)(2)] does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." *Johnson*, 169 F.3d at 1098.

*United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999). The Eleventh Circuit has "also conclusively . . . determined that cooperation provisions of plea agreements do not violate 18 U.S.C. § 201(c)(2). *See United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999)." *United States v. White*, 342 F. App'x 488, 490 (11th Cir. 2009). There is thus no legal basis for finding Harvey *Strickland*-deficient here, so Mills's IAC claim against him fails.

### E. Witness Vouching (Grounds 1 & 4)

Harvey also was ineffective, Mills argues, for failing to object to improper vouching by the prosecutor during his trial. The prosecutor questioned co-defendant Robinson about the venture he and Mills were on when Crowe pulled them over:

Q    Even though you didn't [see] them, did you know the  drugs were in the car?

A    I had an idea.

Q    Why did you have an idea?

A    Because that was what was the plan.

Q    You had *more than an idea*, didn't you, Mr.Robinson?

A    Yeah.

Q    *You knew exactly what was going on.*

A    *Yeah.*

Q    So what was going on?

A    We was suppose [sic] to take the drugs to Delaware.

Q    Okay.  And do what with them?

A    Sell it.

Doc.  96 at 74 (emphasis added).  And during his opening argument the prosecutor told the jury that

Mr. Robinson has *pled guilty* in the case, and he will be testifying here before you today. He has pled guilty to the offense of possession with intent to distribute cocaine. [¶] Mr. Robinson did this under what is called a plea agreement. I'm sure you've heard the term before. A plea agreement is simply an agreement between the prosecuting authority -- in this case, us -- and a defendant in a criminal case that he will plead guilty, usually to something lessen [sic] than what he was charged with, in exchange for his *truthful cooperation and testimony* in the case.

*Id.* at 14 (emphasis added).

Mills cites the emphasized language and supplies transcript cites to support them. Doc. 105 at 15-16. He then strings those comments together in arguing that Harvey was ineffective for failing to object to witness vouching, as reinforced by the prosecutor's closing argument:

Further, the prosecutor improperly bolstered Robinson's testimony - by stating, "If he wasn't telling the truth that he could get charged with perjury, obstruction of justice and a longer sentence." These comments clearly suggested to the jury that Robinson's testimony was truthful, even though he had made numerous prior inconsistent statements denying his involvement and Defendant Mills' involvement.

Doc. 105 at 15-16 (Mills's § 2255 brief); *see also id.* at 30-32. Conspicuously, Mills does not supply a transcript cite for the quoted language "If he wasn't telling the truth that he could get charged with perjury, obstruction of justice and a longer sentence." In fact it is *not* in the transcript. Doc. 96 at 134-44. Even if it was, there is nothing

improper about *any* of the comments; they all easily fall within the range of permissible questioning and closing argument. *See, e.g. United States v. Gonzalez,* 294 F. App'x 527, 528 (11th Cir. 2008) (prosecutor's questioning of cooperating witnesses, in prosecution for conspiring to manufacture, distribute, and possess with intent to manufacture and distribute more than 1,000 marijuana plants, and manufacturing and possessing with intent to distribute more than 100 marijuana plants, concerning truth-telling requirements of their plea agreements, their sentence reductions, and penalties for perjury did not constitute impermissible vouching). Mills therefore has failed to show that Harvey was ineffective.

## F. Evidentiary Sufficiency (Grounds 1 & 5)

Movant next complains that Harvey did not do a good enough job challenging the prosecution's evidence -- it was so thin, he insists, that no rational jury could convict. Doc. 105 at 19-24, 32-34. In addition to having been decided against him on appeal, this claim is conclusory and goes nowhere. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (no habeas relief "when . . . claims are merely conclusory

allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (quotes and cite omitted).

It is also baseless. The record shows that Mills was a passenger in the car in which the cocaine was found. The car's driver testified against him, stating that Mills was in on the scheme which encompassed transportation of the cocaine. It was for the jury to sift the evidence; it was for this Court to step in and direct a judgment of acquittal if there was not enough evidence to even sift. Based on the record evidence, no judgment of acquittal would have been seriously entertained. Thus this claim, too, must be denied.

### G. Sentencing Guideline Error (Ground 8)

Sentencing Guideline errors ordinarily are not cognizable on collateral review, except as threaded through an IAC claim. *Cofske v. United States*, 290 F.3d 437, 441 (1st Cir. 2002) (a Sentencing Guideline error is not a constitutional error so it is not a basis for relief under 28 U.S.C. § 2255; but if it "is repackaged as one of ineffective assistance of counsel . . . it becomes a constitutional claim."). Again arguing that Harvey was ineffective, Mills complains that his sentence calculation was flawed because U.S.S.G. § 4A1.2(c)(1) authorized an extra "criminal

history" point (thus resulting in more prison time) for a prior offense packing a probation term of *more than* one year. But Mills had received *only* one year for his prior crimes, so he should not have received that extra point. Doc. 105 at 41-43.

The government correctly points out, however, that Mills is trying to exploit a later version of U.S.S.G. § 4A1.2(c)(1) (which directed the result he seeks here) that is *not* retroactive. *See, e.g.*, *United States v. Bennett*, 340 F. App'x 981, 981 (5th Cir. 2009) (Amendment to Sentencing Guidelines clarifying that certain misdemeanors or petty offenses were to be counted for criminal history purposes only if court imposed sentence longer than one year of probation or at least thirty days of imprisonment did not apply retroactively, where amendment was not listed in policy statement). Harvey thus could not be found *Strickland*-deficient on this claim.

## III. CONCLUSION

All of Mills's IAC claims are without merit. Moreover, he has not shown cause for excusing the procedural default of his merits claims or any circumstances persuading the Court to permit him to relitigate his

sufficiency of the evidence claim. Accordingly, Demond Mills's 28 U.S.C. § 2255 motion (doc. 105) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this ___29th___ day of September, 2010.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA